FILED - GR
July 29, 2013 3:02 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY _ns_/____  SCANNED BY MS 7/29

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL VORCE,　　　　　　　　　　) | Case No._____ |
| 　　　　　　　　　　　　　　　　　) | **1:13-cv-801** |
| 　　　　　Plaintiff,　　　　　　) | Paul L Maloney - Chief U.S. District Judge |
| 　　　　　　　　　　　　　　　　　) | Joseph G Scoville - U.S. Magistrate Judge |
| 　　vs.　　　　　　　　　　　　　) | Hon. |
| 　　　　　　　　　　　　　　　　　) | |
| INTELEPEER, INC., a Delaware　　) | |
| corporation; INTELEPEER HOLDINGS,) | |
| INC., a Delaware corporation;　) | |
| HAYDAR HABA, individually and in) | |
| his official capacity; DANIEL　) | |
| QUANDT, individually and in his) | |
| official capacity; SAM RAMAN,　) | |
| individually and in his official) | |
| capacity; JOHN BELANGER,　　　) | |
| individually and in his official) | **COMPLAINT** |
| capacity; FRANK FAWZI, individually) | |
| and in his official capacity;　) | |
| TOM FERGUSON, individually and in) | |
| his official capacity; ANDRE SIMONE,) | |
| individually and in his official) | |
| capacity; MG CAPITAL MANAGEMENT,) | |
| LLC, a Delaware limited liability) | |
| company; MARCO PETRONI, individually) | |
| and in his official capacity;　) | |
| VANTAGEPOINT VENTURE PARTNERS 2006) | |
| (Q), L.P., a Delaware limited　) | |
| partnership; VANTAGEPOINT VENTURE) | |
| ASSOCIATES 2006, LLC, a Delaware) | |
| limited liability company; ALAN E.) | |
| SALZMAN, individually and in his) | |
| official capacity; ATEL VENTURES,) | |
| INC., a Delaware corporation;　) | |
| VASCOE H. MORAIS, individually and) | |
| in his official capacity; HERCULES) | |
| TECHNOLOGY II, L.P., a Delaware　) | |
| limited partnership; HERCULES　) | |
| TECHNOLOGY SBIC MANAGEMENT, LLC, a) | |
| Delaware limited liability company,) | |
| HERCULES TECHNOLOGY GROWTH CAPITAL,) | |
| INC., a Delaware corporation;　) | |
| K. NICHOLAS MARTITSCH, individually) | |
| and in his official capacity;　) | |
| KENNET II L.P., a limited　　) | |
| partnership of England; KENNET　) | |
| CAPITAL MANAGEMENT (JERSEY) LTD., a) | |
| corporation of England;　　　　) | |

KING STREET PARTNERS L.P., a                )
limited partnership of England;             )
MARK RUMBOLD, individually and in           )
his official capacity; EDF VENTURES         )
III, LIMITED PARTNERSHIP, a Michigan        )
limited partnership; ENTERPRISE             )
VENTURES III, LIMITED PARTNERSHIP,          )
a Michigan limited partnership;             )
EDM III, INC., a Michigan                   )
corporation; EDF VENTURES III SIDECAR,)
LIMITED PARTNERSHIP, a Michigan             )
limited partnership; ENTERPRISE             )
VENTURES III SIDECAR, LIMITED               )
PARTNERSHIP, a Michigan limited             )
partnership; EDM III SIDECAR, INC.,         )
a Michigan corporation; and                 )
MARY LINCOLN CAMPBELL, individually         )
and in her official capacity,               )
                                            )
             Defendants                     )
_____     )

      Plaintiff Michael Vorce brings this action for compensatory, declaratory, injunctive and punitive relief under Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q; Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b); Rule 10b-5, 17 C.F.R. § 240.10b-5; and the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), against Intelepeer, Inc. and its officers, directors, managers and/or controlling persons for securities fraud and the operation of a continuing criminal enterprise. Plaintiff also alleges retaliation under the Securities Whistleblower Incentive and Protection section of the Dodd-Frank Act, 15 U.S.C. § 78u-6, forgery, uttering forged and counterfeit securities of private entities, theft, conversion, interstate transportation of stolen property, misrepresentation, breach of fiduciary duty, mail fraud, wire fraud, and aiding and abetting. Plaintiff states the following as his Complaint against Defendants:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, § 1332, § 2201; 18 U.S.C. § 1341, § 1343, § 1964; and 15 U.S.C. § 77c, § 78aa.

2.     This Court may exercise supplemental subject matter jurisdiction over all related state law claims under 28 U.S.C. § 1367(a).

3.     As set forth in further detail below, this Court has personal jurisdiction over the Defendants because the Defendants misrepresented or omitted material facts, committed fraudulent acts, and/or otherwise purposely took affirmative actions within this District, directed towards this District, or which resulted in foreseeable or intended consequences within this District.

4.     Venue is proper in this Court because the Defendants' offending activities were targeted towards this District with respect to Plaintiff, caused substantial damages incurred in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District. In addition, for purposes of jurisdiction and venue, Plaintiff and some of the Defendants reside, or have resided, in this District.

## PARTIES

5.     Plaintiff Michael Vorce is a resident of this District.  He co-founded Intelepeer, Inc. and at all times herein is Intelepeer's largest individual stockholder.  Plaintiff served as Director and Executive Vice President for Intelepeer, Inc. from 2003 to 2005.

6.     Defendant Intelepeer, inc. ("Intelepeer") is a Delaware corporation with offices at 2855 Campus Drive, Suite 200, San Mateo, California 94403. Intelepeer is formerly known as VoEx, Inc.

7.      Defendant Intelepeer Holdings, Inc. ("Intelepeer Holdings") is a Delaware corporation with offices at 2855 Campus Drive, Suite 200, San Mateo, California 94403.  Intelepeer Holdings is made party to this action by its insertion in the corporate ownership chain directly above Intelepeer in July 2012.

8.      Defendant Haydar Haba ("Haba") is a resident of California. He is a co-founder of Intelepeer and in his official capacity as former Director and Chief Executive Officer has fiduciary responsibility to Plaintiff at all times herein.

9.      Defendant Daniel Quandt ("Quandt") is a resident of Washington. He is a co-founder of Intelepeer and in his official capacity as former Director and Chief Financial Officer had fiduciary responsibility to Plaintiff at all times herein.

10.     Defendant Sam Raman ("Raman") is a resident of Nevada.  He is a co-founder of Intelepeer and in his official capacity as former Director and Chief Operations Officer had fiduciary responsibility to Plaintiff at all times herein.

11.     Defendant John Belanger ("Belanger") is a resident of this District.  He is a former Director of Intelepeer and in his official capacity had fiduciary responsibility to Plaintiff at all times herein.

12.     Defendant Frank Fawzi ("Fawzi") is a resident of Florida and California.  He is Chief Executive Officer and Director of Intelepeer, and in his official capacity had fiduciary responsibility to Plaintiff at all times herein.

13.   Defendant Tom Ferguson ("Ferguson") is a resident of Florida. He is a former Director of Intelepeer and in his official capacity had fiduciary responsibility to Plaintiff at all times herein.

14.   Defendant Andre Simone ("Simone") is a resident of California. He is Chief Financial Officer of Intelepeer and in his official capacity had fiduciary responsibility to Plaintiff at all times herein.

15.   Defendant MG Capital Management, LLC ("MG Capital") is a Delaware limited liability company with offices at 1725 Kearny Street, Apt. 1, San Francisco, California 94133.  MG Capital is an investor and stockholder in Intelepeer.

16.   Defendant Marco Petroni ("Petroni") is a resident of California. In his official capacity he is President and Member of MG Capital.

17.   Defendant VantagePoint Venture Partners 2006 (Q), L.P. ("VantagePoint Partners") is a Delaware limited partnership with offices at 1002 Bayhill Drive, San Bruno, California 94066.  VantagePoint Partners is an investor in Intelepeer.

18.   Defendant VantagePoint Venture Associates 2006, LLC ("VantagePoint Associates") is a Delaware limited liability company with offices at 1002 Bayhill Drive, San Francisco, California 94066.  VantagePoint Associates is General Partner of VantagePoint Partners.

19.   VantagePoint Partners and VantagePoint Associates are hereinafter collectively referred to as "VantagePoint."

20.   Defendant Alan E. Salzman ("Salzman") is a resident of California. He is Managing Member of VantagePoint Associates and in his official capacity is responsible for the actions of VantagePoint at all times herein.

21.    Defendant Atel Ventures, Inc. ("Atel") is a Delaware corporation
with offices at 600 Montgomery Street, 9th Floor, San Francisco, California
94111.  Atel is an investor in Intelepeer.

22.    Defendant Vascoe H. Morais ("Morais") is a resident of California.
He is Executive Vice President of Atel and in his official capacity is responsible
for the actions of Atel.

23.    Defendant Hercules Technology II, L.P. ("Hercules Technology")
is a Delaware limited partnership with offices at 400 Hamilton Avenue,
Suite 310, Palo Alto, California 94301.  Hercules Technology is an investor
in Intelepeer.

24.    Defendant Hercules Technology SBIC Management, LLC ("Hercules
Management") is a Delaware limited liability company with offices at 400
Hamilton Avenue, Suite 310, Palo Alto, California 94301.  Hercules Management
is the General Partner of Hercules Technology.

25.    Defendant Hercules Technology Growth Capital, Inc. ("Hercules
Capital") is a Delaware corporation with offices at 400 Hamilton Avenue,
Suite 310, Palo Alto, California 94301.  Hercules Capital is the Manager
of Hercules Management.

26.    Hercules Technology, Hercules Management and Hercules Capital
are hereinafter collectively referred to as the "Hercules Ventures."

27.    Defendant K. Nicholas Martitsch ("Martitsch") is a resident of
California.  He is Director of Hercules Capital and in his official capacity
is responsible for the actions of the Hercules Ventures at all times herein.

28.    Defendant Kennet II L.P. ("Kennet II") is a limited partnership
of England with office at 950 Tower Lane, Suite 1710, Foster City, California
94404.  Kennet II is an investor in Intelepeer.

Page 6

29.     Defendant Kennet Capital Management (Jersey) Ltd. ("Kennet Capital") is a corporation of England with offices at 950 Tower Lane, Suite 1710, Foster City, California 94404.  Kennet Capital is the Manager of Kennet II.

30.     Defendant King Street Partners, L.P. ("King Street") is a limited partnership of Englad with offices at 205 King Street, Charleston, South Carolina 29401.  Kennet Capital is the Manager of King Street.

31.     Kennet II, Kennet Capital and King Street are hereinafter collectively referred to as the "Kennet Ventures."

32.     Defendant Mark Rumbold ("Rumbold") is a resident of California. He is Director of Kennet Capital and in his official capacity is responsible for the actions of the Kennet Ventures at all times herein.

33.     Defendant EDF Ventures III, Limited Partnership ("EDF") is a Michigan limited partnership with offices at 424 North Main Street, Ann Arbor, Michigan 48104.  EDF is an investor in Intelepeer.

34.     Defendant Enterprise Ventures III, Limited Partnership ("Enterprise") is a Michigan limited partnership with offices at 425 North Main Street, Ann Arbor, Michigan 48104.  Enterprise is the General Partner of EDF.

35.     Defendant EDM III, Inc. ("EDM") is a Michigan corporation with offices at 425 North Main Street, Ann Arbor, Michigan 48104.  EDM is the General Partner of Enterprise.

36.     Defendant EDF Ventures III Sidecar, Limited Partnership ("EDF Sidecar") is a Michigan limited partnership with offices at 425 North Main Street, Ann Arbor, Michigan 48104.  EDF Sidecar is an investor in Intelepeer.

37.     Defendant Enterprise Ventures III Sidecar, Limited Partnership ("Enterprise Sidecar") is a Michigan limited partnership with office at 425 North Main Street, Ann Arbor, Michigan 48104.  Enterprise Sidecar is the General Partner of EDF Sidecar.

38.    Defendant EDM III Sidecar, Inc. ("EDM Sidecar") is a Michigan corporation with offices at 425 North Main Street, Ann Arbor, Michigan 48104. EDM Sidecar is the General Partner of Enterprise Sidecar.

39.    EDF, Enterprise, EDM, EDF Sidecar, Enterprise Sidecar, and EDM Sidecar are hereinafter collectively referred to as the "EDF Ventures."

40.    Defendant Mary Lincoln Campbell ("Campbell") is a resident of Michigan.  She is Managing Director of EDM and EDM Sidecar, and in her official capacity is responsible for the actions of the EDF Ventures at all times herein.

## FACTUAL ALLEGATIONS

### Overview of Suit

41.    At all times relevant to this Complaint, Plaintiff has owned a 20.3% interest in Intelepeer.

42.    At all times relevant to this Complaint, Defendants did knowingly and willfully conspire to commit securities fraud to unlawfully dilute Plaintiff's interest.  Defendants made material misrepresentations and employed manipulative and deceptive devices by means of mail and electronic communications in interstate commerce in connection with Intelepeer stock sales and offerings.

43.    In furtherance of their fraud, Defendants did knowingly and willfully forge Plaintiff's signature on a Registration Statement they caused to be filed with the Securities Exchange Commission ("SEC") and misrepresent Plaintiff's consent with respect to Intelepeer stock sales and stockholder agreements.

44. Plaintiff has made earnest efforts to recover his interest and settle this matter. Defendants have not only refused to return Plaintiff's rightful interest or provide him with equitable remuneration, they have further conspired to cover up their unlawful and improper activities from the SEC and the Federal Communications Commission ("FCC") resulting in further injury to Plaintiff.

45. At all times herein, the acts of the Defendants constitute a "scheme or artifice to defraud" as defined under 18 U.S.C. § 1341, § 1343, and § 1346.

### Plaintiff's Original Interest in Intelepeer

46. Intelepeer is a Voice over Internet Protocol (VoIP) service provider that was duly formed on June 19, 2003 by Plaintiff and Defendants Haba, Quandt, and Raman (together, the "Founders"). Intelepeer was originally headquartered in Grand Rapids Michigan, but later relocated its operations to Silicon Valley.

47. Pursuant to the Founders' agreement and Intelepeer's incorporation under the laws of the State of Washington, Intelepeer was originally authorized to issue 8,350,000 shares of Common Stock.

48. As consideration for providing Intelepeer with its startup capital in 2003, the Founders granted Plaintiff a 23.4% ownership interest and issued him 1,952,674 shares of Intelepeer Common Stock commensurate with his interest, thereby making Plaintiff the largest individual owner/shareholder.

49. At all times herein any increase in the total number of shares authorized to be issued Intelepeer required the consent of Plaintiff.

### The Series A Stock Sale and Plaintiff's Resulting Interest

50.    In or around September 2004, with Plaintiff's knowledge and consent, the Founders amended Intelepeer's Certificate of Incorporation to facilitate the authorization and issuance of 1,280,210 shares of preferred stock to MG Capital ("Series A Stock Sale").

51.    As a result, Plaintiff's interest in Intelepeer was properly and consensually decreased by 3.1%, or to 20.3%.

52.    At all times herein the Series A Stock Sale is the only stock transaction that Plaintiff had full knowledge of and to which he consented.

### Plaintiff Resigns Due to Misrepresentations and Omissions

53.    In July 2005, Plaintiff resigned from Intelepeer as Executive Vice President due to, inter alia, Haba's (a) repeated and ongoing misrepresentations and omissions to investors and stockholders, both in Intelepeer's prospectus and orally during "road show" meetings and conference call; (b) misappropriation of investor monies entrusted to Intelepeer for specific business purposes; and (c) decision to involve Fawzi, Haba's cousin, in Intelepeer.

54.    Shortly after Plaintiff's resignation, Defendants Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone did conspire and collude to dilute and otherwise steal Plaintiff's interest in Intelepeer for their personal benefit and the benefit of companies they owned and/or controlled. This agreement anticipated and specifically included the acts and misrepresentations and omissions of the Defendants described below.

**Defendants' Securities Fraud in Connection with the Series B Stock Sale**

55.     On June 30, 2006, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, Petroni, and MG Capital ("collectively, "Series B Defendants") did commit securities fraud by causing to be issued and sold 24,730,382 shares of Intelepeer Series B preferred stock ("Series B Stock Sale") without the knowledge or consent of Plaintiff.

56.     At all times herein the Series B Defendants knew that Plaintiff's consent was required and thus material to the Series B Stock Sale.

57.     Given reasonable due diligence, it appears that as an inducement to the transaction, the Series B Defendants deliberately misrepresented Plaintiff's consent to purchasers of Series B stock ultimately to reap personal financial gain and arbitrarily dilute Plaintiff's interest. They accomplished this by transmitting in or about March 2006 to June 30, 2006, by means of the mails, telephone, facsimile, and email in interstate commerce, a prospectus and oral communications containing untrue statements of material fact or omitting to state material facts with respect to the true nature of Plaintiff's interest in Intelepeer and his consent to the Series B Stock Sale.

58.     The sale generated approximately $12 million in proceeds which, on information and belief, directly benefitted the Series B Defendants and companies they controlled and/or owned. On or about June 30, 2006, they caused said proceeds to be transferred to accounts of their designation at federally insured financial institutions by means of wire in interstate commerce.

59.     Plaintiff at no time received any benefit from the transaction. On the contrary, Plaintiff has suffered substantial property loss and irreparable injury as a result of the Series B Stock Sale and the securities fraud upon which it was predicated.

60.     Specifically, Plaintiff's interest in Intelepeer was intentionally and unlawfully diluted by 14.6%, from 20.3% to 5.7%, as a direct result of the misrepresentations and omissions and other illegal acts by the Series B Defendants.

### Defendants' Securities Fraud in Connection with the Series C Stock Sale

61.     On October 31, 2008, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, Simone, Petroni, Rumbold, Campbell, MG Capital, Kennet Ventures, and EDF Ventures (collectively, "Series C Defendants") did commit securities fraud by causing to be issued and sold 17,750,000 shares of Intelepeer Series C preferred stock ("Series C Stock Sale") without the consent of Plaintiff.

62.     At all times herein the Series C Defendants knew that Plaintiff's consent was required and thus material to the Series C Stock Sale.  In fact, they attempted to obtain it on the eve of the closing.

63.     On October 29, 2008, two days prior to the sale, Belanger personally met with Plaintiff on behalf of the Series C Defendants and informed him of the Series C Stock Sale for the first time.  Belanger refused to disclose any terms or substantive information, and provided Plaintiff with only the signature page of a new stockholder agreement in connection with the sale. When Plaintiff requested to see the entire agreement, Belanger said that they were about to obtain a very large amount of money and just needed a signed signature page; he was sent to get it.

64.     In an attempt to induce Plaintiff's signature, Belanger proffered statements guaranteeing that (a) Intelepeer would conduct an initial public offering ("IPO") within 6 months; and (b) Plaintiff would receive a multi-million dollar windfall if he would just sign the document.

65.    The meeting between Belanger and Plaintiff was recorded on video and preserved on DVD.

66.    The following day, October 30, 3008, Plaintiff participated in an interstate conference call with Simone, who was acting on behalf of the Series C Defendants.

67.    Plaintiff explained that he would not consent to the Series C Stock Sale or any other transaction without, at a minimum, Intelepeer's provision of all agreements in connection with the sale as well as full disclosure of the Series B Stock sale.

68.    Simone repeatedly stated that he and the other Defendants had been working on the transaction for many months, that the long anticipated closing was scheduled for the next day, and urged Plaintiff to sign the signature page presented by Belanger no questions asked without seeing the actual agreement or having knowledge of it.

69.    Plaintiff ignored these statements and continued to inquire about the Series B and Series C transactions.  Specifically, Plaintiff asked how Intelepeer was legally issuing and selling shares without Plaintiff's consent, and whether Plaintiff's interest was being diluted as a result.

70.    Simone refused to answer Plaintiff's questions or provide any information, and repeated that the closing was scheduled for the next day.  He then stated it was imperative that Plaintiff signed the agreement, as the Series C Defendants had represented to investors and stockholders that Plaintiff had already consented to the sale.

71.    At that point, Plaintiff refused to sign any documents or consent to the Series C Stock Sale.

72.     Prior to concluding the conference call, Simone said they would go ahead with the sale anyway, just as they had done before.  Plaintiff understood from this and other aspects of his conversations with Simone and Belanger that the Series C Defendants were conducting stock sales without his consent while at the same time making contrary representations to investors and stockholders.

73.     The conference call between Plaintiff and Simone was recorded and preserved on CD.

74.     Based on admissions of Simone and Belanger, the Series C Defendants deliberately misrepresented Plaintiff's consent to purchasers of Series C stock in order to personally benefit and arbitrarily dilute Plaintiff's interest in Intelepeer.  They accomplished this by transmitting in or about August 2008 to October 31, 2008, by means of the mails, telephone, facsimile, and email in interstate commerce, a prospectus and oral communications containing untrue statements of material fact or omitting to state material facts regarding the true nature of Plaintiff's interest in Intelepeer and his consent to the Series D Stock Sale.

75.     The sale generated approximately $17 million in proceeds which, on information and belief, directly benefitted the Series C Defendants and companies they controlled and/or owned.  On or about October 31, 2008, they caused said proceeds to be transferred to accounts of their designation at federally insured financial institutions by means of wire in interstate commerce.

76.     Plaintiff at not time received any benefit from the transaction, but rather has suffered substantial property loss and irreparable injury.

77.     Specifically, Plaintiff's interest was intentionally and unlawfully diluted by 2.0%, from 5.7% to 3.7%, as a direct result of the misrepresentations and omissions and other illegal acts by the Series C Defendants.

Page 14

### Defendants' Securities Fraud in Connection with Common Stock Sales

78.    Between August 2005 and May 2011, the Series B and Series C
Defendants did commit securities fraud by causing to be issued and sold
25,996,368 shares of Intelepeer Common Stock ("Common Stock Sales") without
the knowledge or consent of Plaintiff.

79.    At all times herein these Defendants knew that Plaintiff's
consent was required and thus material to the Common Stock Sales.

80.    Given reasonable due diligence, it appears that as an inducement
to the transactions, the Defendants deliberately misrepresented Plaintiff's
knowledge and consent to purchasers of Common Stock for personal financial
gain and to arbitrarily dilute Plaintiff's interest in Intelepeer.  They
accomplished this by transmitting between August 2005 and May 2011, by means
of the mails, telephone, facsimile, and email in interstate commerce, prospectuses
and oral communications containing untrue statements of material fact or omitting
to state material facts regarding the true nature of Plaintiff's interest in
Intelepeer and his consent to the Common Stock Sale.

81.    Collectively, these sales generated approximately $6 million in
proceeds which, on information and belief, directly benefitted the Defendants
and companies they controlled and/or owned.  On information and belief, the
Defendants caused said proceeds to be transferred to accounts of their designation
at federally insured financial institutions by means of wire in interstate commerce.

82.    Plaintiff at not time received any benefit from the Common Stock
Sales, but rather has suffered substantial property loss and irreparable injury.

83.    Plaintiff's interest was intentionally and unlawfully further
diluted by 1.2%, from 3.7% to 2.5%, as a direct result of the Defendants'
misrepresentations and omissions and other illegal acts.

## Plaintiff Provides Notice of Securities Fraud

84.     On November 2, 2008 and March 30, 201, Plaintiff sent notices to Intelepeer's investors and stockholders advising them that the Series B and Series C Defendants had committed securities fraud by making material misrepresentations or omissions in connection with Intelepeer's stock sales. Plaintiff further advised that he actually held a 20.3% or greater interest in Intelepeer due to, inter alia, not consenting to the stock sales.

85.     The notice was sent to the following Defendants: Intelepeer, Haba, Belanger, Fawzi, Simone, Salzman, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures.

86.     On May 6, 2010, the Defendants, by and through attorneys DLA Piper, confirmed in writing their receipt of Plaintiff's notices of fraud and claims of interest.

## Plaintiff Pledges Portion of Interest to United States

87.     On December 29, 2011 the United States District Court for the Western District of Michigan entered an Amended Judgment in a Criminal Case, ordering Plaintiff to pay restitution.

88.     On January 3, 2012, Plaintiff pledged to the Court a portion of his interest in Intelepeer to the extent required to satisfy the restitution obligation.

## Defendants' Forgery, Misrepresentations to the SEC in Connection with Registration Statement

89.     On or about May 5, 2011, Defendants conspired to forge Plaintiff's signature on a Registration Statement they caused to be filed with the SEC in connection with Intelepeer's planned IPO.  Defendants' forgery purported to represent Plaintiff's consent to the registration and public stock offering.

90.    The Registration Statement, by virtue of Defendants' forgery and misrepresentations, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein.

91.    Given reasonable due diligence, it appears that Defendants signed the Registration Statement with full knowledge of such untruth or omission with the common objective of personally benefitting from a public offering of Intelepeer's stock.

92.    Defendants' forgery appears to be in furtherance of their scheme or artifice to defraud Plaintiff as well as the SEC and the public.

93.    On May 5, May 11 and July 5, 2011, Plaintiff sent notices to Intelepeer, Haba Fawzi, Simone, VantagePoint, and Salzman demanding that they correct the misrepresentations in Intelepeer's SEC filings and fully disclose Plaintiff's true ownership interest.

### Defendants' Cover-Up, Misrepresentations to SEC and FCC

94.    On August 21 and September 17, 2012, Defendants willfully conspired to make material misrepresentations and omissions regarding Plaintiff's interest in supplemental filings to the SEC and FCC.

95.    The Defendants in fact acknowledged that Plaintiff was an original owner holding "a 10% or greater interest in the company," but suggested this may no longer be the case because "stock trades often result in new minority ownership stakes from time to time."

96.    Plaintiff at no time provided consent or authorization to Defendants to trade, sell, or otherwise transfer his interest and commensurate stock shares. Defendants' statements and filings to the SEC and FCC are misrepresentations and omissions apparently intended to cover-up their improper and unlawful dilution of Plaintiff's interest.

**Defendants' Latest Securities Fraud**

97.     On information and belief, in June 2013, the Defendants did commit securities fraud by causing to be issued and sold additional shares of preferred stock ("Series D Stock Sale") without the knowledge or consent of Plaintiff.

98.     At all times herein Defendants knew that Plaintiff's consent was required and material to the Series D Stock Sale.

99.     On information and belief, as an inducement to the transaction, Defendants deliberately misrepresented Plaintiff's consent to purchasers of Series D stock to reap financial gain and arbitrarily dilute Plaintiff's interest. On information and belief, they accomplished this by transmitting in or about March 2013 to June 2013, by means of the mails, telephone, facsimile, and email in interstate commerce, a prospectus and oral communications containing untrue statements of material fact or omitting to state material facts regarding the true nature of Plaintiff's interest in Intelepeer and his consent to the Series D Stock Sale.

100.    The sale generated $15 million in proceeds which, on information and belief, directly benefitted the Defendants and companies they owned and/or controlled. On information and belief, in or about June 2013, Defendants caused said proceeds to be transferred to accounts of their designation at federally insured financial institutions by means of wire in interstate commerce.

101.    On information and belief, Plaintiff has suffered substantial property loss and irreparable injury as a result of the Series D Stock Sale and the Defendants' intentional and illegal acts, including but not limited to further dilution of his ownership interest in Intelepeer.

## CLAIMS FOR RELIEF

### Count I
### Violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q
### (Against Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone)

102.    Plaintiff incorporates by reference the allegations stated in the above paragraphs.

103.    Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone, in the offer or sale of securities, by use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

        A.    Employed devices, schemes or artifices to defraud:

        B.    Obtained money or property by means of an untrue statement of a material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

        C.    Engaged in a transaction, practice, or course of business that operated as a fraud or deceit upon the Plaintiff.

These acts are described with particularity above and herein, particularly paragraphs 55-83.

104.    Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone knew or recklessly disregarded the fact that had the misrepresentations and omissions been properly disclosed, the securities described above would not have been purchased/sold.  The very purpose of the misrepresentations and omissions was to induce the sale of securities in Intelepeer for their personal benefit and to dilute Plaintiff's interest.

105.    By engaging in the conduct described above, Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone have violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q, and the Rules and Regulations thereunder.

106.    By reason of their status as an officer, manager, and/or director, or of their participation in the operations of Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone were each a "control person," and are responsible and liable under Section 15 of the Securities Exchange Act, 15 U.S.C. § 77o, for the violations of the federal securities laws described above.

107.    As a proximate result of Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone's misrepresentations and omissions and fraudulent practices, Plaintiff has suffered substantial damages in the form of lost property, by virtue of his diluted/stolen interest in Intelepeer, plus all consequential damages flowing therefrom, including lost returns.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone in the full amount to which Plaintiff is entitled, plus interest and costs, and order any additional or other relief that the Court may deem just and proper under the circumstances.

## Count II
## Aiding and Abetting
## Violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q
### (Against Salzman, Petroni, Rumbold, Campbell,
### VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures)

108.   Plaintiff incorporates by reference the allegations stated in the above paragraphs.

109.   As described in the previous count, Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone, in the offer or sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

A.   Employed devices, schemes or artifices to defraud;

B.   Obtained money or property by means of an untrue statement of a material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

C.   Engaged in a transaction, practice, or course of business that operated as a fraud or deceit upon the Plaintiff.

110.   Defendants Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures knowingly participated in and assisted in the execution of this scheme to violate the Securities Act in order to defraud Plaintiff by assisting Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone in perpetrating misrepresentations and omissions and other fraudulent acts.

111.   Defendants Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures were aware that their role was part of an overall activity that was improper, and knowingly and substantially assisted the violations.

112.    Defendants Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures, in the manner set forth above, knowingly or with severe recklessness provided substantial assistance to Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone in connection with their violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q, and the Rules and Regulations thereunder.

113.    By reason of their status as an officer, manager, and/or director, or of their participation in the operations of Intelepeer, Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures were each a "control person," and are responsible and liable for the actions of Intelepeer.

114.    By reason of the foregoing, Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures aided and abetted Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone's violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q, and the Rules and Regulations thereunder.

115.    As a proximate result of Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone's misrepresentations and omissions and fraudulent practices, and Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures' involvement and assistance with the same, Plaintiff has suffered substantial damages in the form of lost property, by virtue of his diluted/stolen interest in Intelepeer, plus all consequential damages flowing therefrom, including lost returns.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, Simone, Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures in the full amount to which Plaintiff is entitled, plus interest and costs, and order any additional or other relief the Court may deem just and proper under the circumstances.

**Count III**
**Violation of Section 10(b) of the Securities Exchange Act of 1934,**
**15 U.S.C. § 78j, and Rule 10(b)-5**
**(Against Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone)**

116. Plaintiff incorporates by reference the allegations stated in the above paragraphs.

117. Defendants Intelepeer, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly:

> A. Used or employed devices, schemes, or artifices to defraud Plaintiff;
>
> B. Made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and
>
> C. Engaged in acts, practices, or courses of business which operated as a fraud and deceit upon the Plaintiff.

These acts are described with particularity above and herein, particularly paragraphs 55-83.

118. Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone knowingly or recklessly engaged in the fraudulent conduct described above.

119. Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone knew or recklessly disregarded the fact that had the misrepresentations and omissions been properly disclosed, the securities described above would not have been purchased/sold. The very purpose of the misrepresentations and omissions was to induce the sale of securities in Intelepeer and dilute Plaintiff's interest.

120.    By engaging in the conduct described above, Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone have violated Section 10(b) of the Securities Exchange Act of 1934, as amended (the "Securities Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10(b)-5, 77 C.F.R. § 240.10b-5 (17 C.F.R. § 240.10b-5), promulgated thereunder.

121.    By reason of their status as an officer, manager, and/or director, or of their participation in the operations of Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone were each a "control person," and are responsible and liable under Section 15 of the Securities Act, 15 U.S.C. § 77o, for the violations of the federal securities laws described above.

122.    As a proximate result of Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone's misrepresentations and omissions and fraudulent practices, Plaintiff has suffered substantial damages in the form of lost property, by virtue of his diluted/stolen interest in Intelepeer, plus all consequential damages flowing therefrom, including lost returns.

WHEREFORE, Plaintiff requests that this court enter judgment in his favor against Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone in the full amount to which the Plaintiff is entitled, plus interest and costs, and order any additional or other relief that the Court may deem just and proper under the circumstances.

**Count IV**
**Aiding and Abetting**
**Violation of Section 10(b) of the Securities Exchange Act of 1934,**
**15 U.S.C. § 78j, and Rule 10(b)-5**
**(Against Salzman, Petroni, Rumbold, Campbell,**
**VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures)**

123. Plaintiff incorporates by reference the allegations stated in the above paragraphs.

124. As described in the preceding count, Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce or of the mails, directly or indirectly:

      A.    Used or employed devices, schemes, or artifices to defraud Plaintiff;

      B.    Made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

      C.    Engaged in acts, practices, or courses of business which operated as a fraud and deceit upon the Plaintiff.

125. Defendants Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures knowingly participated in and assisted in the execution of this scheme to violate the Securities Exchange Act in order to defraud Plaintiff by assisting Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone in perpetrating misrepresentations and omissions and other fraudulent acts, as described above and herein.

126. Defendants Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures were aware that their role was part of an overall activity that was improper, and knowingly and substantially assisted the violations.

127.    Defendants Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures, in the manner set forth above, knowingly or with severe recklessness provide substantial assistance to Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone in connection with their violation of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10(b)-5, 77 C.F.R. § 240.10b-5, promulgated thereunder.

128.    By reason of their status as an officer, manager, and/or director, or of their participation in the operations of Intelepeer, Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures were each a "control person," and are responsible and liable for the actions of Intelepeer.

129.    By reason of the foregoing, Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures aided and abetted Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone's violations of Section 10(b) of the Securities Exchange Act of 1934, as amended (the "Securities Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10(b)-5, 77 C.F.R. § 240.10b-5, promulgated thereunder.

130.    As a proximate result of Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone's misrepresentations and omissions and fraudulent practices, and Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures' involvement and assistance with same, Plaintiff has suffered substantial damages in the form of lost property, by virtue of his diluted/stolen interest in Intelepeer, plus all consequential damages flowing therefrom, including lost returns.

Page 26

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, Simone, Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures in the full amount to which Plaintiff is entitled, plus interest and costs, and order any additional or other relief that the Court may deem just and proper under the circumstances.

### Count V
### Violation of the RICO Act, 18 U.S.C. § 1964(c)
### (Against Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, Simone, Salzman, Petroni, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures)

131.    Plaintiff incorporates by reference the allegations stated in the above paragraphs.

### The Defendants' Enterprise and Conduct

132.    The following individuals and entities expressly or impliedly associated together for a common purpose of engaging in a course of conduct to steal Plaintiff's interest for their personal benefit and the benefit of companies they owned and/or controlled: Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, Simone, Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures (collectively, the "RICO Defendants"). In so associating, these individuals and entities comprised an association-in-fact enterprise (referred to as the "Intelepeer Enterprise").

133.    The RICO Defendants not only participated in the fraudulent scheme, but also participated in the operation or management of the Intelepeer Enterprise itself, as indicated by their continuation with the scheme through several different transactions over time.

134.   Each member of the Intelepeer Enterprise furthered the purpose of the enterprise as described in the preceding paragraphs.

135.   In this way, the RICO Defendants associated together for a common purpose of engaging in a fraudulent course of conduct.

### Civil RICO Pattern and Predicate Offenses
### Mail Fraud (18 U.S.C. § 1341) and Wire Fraud (18 U.S.C. § 1343)

136.   In perpetrating the scheme identified above, one or more members of the Intelepeer Enterprise, acting on behalf of the Intelepeer Enterprise, on several occasions, knowingly or with reckless disregard for the truth, materially misrepresented: (a) Plaintiff's true ownership interest in Intelepeer, (b) Plaintiff's consent to Intelepeer stock offerings and sales, and (c) the Defendants' misappropriation of monies obtained in connection with their theft of Plaintiff's interest by means of Intelepeer stock sales.  These misrepresentations are described with particularity above and herein.

137.   Defendants knew or recklessly disregarded the falsity of the above representations.

138.   Each of these misrepresentations or omissions was relied upon in transferring funds in connection with the stock sales.

139.   As part of the pattern of racketeering activity, specfically, to continue the flow of fraudulent funds to the Defendants, and in violation of 18 U.S.C. § 1343, for the purpose of perpetrating the fraudulent scheme, Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone caused to be transmitted via mail in interstate commerce various communications, including but not limited to communications dated, sent, or received on or about the following dates:

A.    March 2006 to June 30, 2006 (Fraudulent prospectus in connection with the Series B Stock Sale);

B.    August 2008 to October 31, 2008 (Fraudulent prospectus in connection with the Series C Stock Sale);

C.    August 2005 to May 2011 (Fraudulent prospectus in connection with the Common Stock Sales);

D.    May 5, 2011 (Fraudulent Registration Statement to the SEC);

E.    March 2013 to June 2013 (Fraudulent prospectus in connection with the Series D Stock Sale); and

F.    Other communications expected to be discovered through the course of discovery.

140.    As part of the pattern of racketeering activity, specifically, to continue the flow of funds to Intelepeer, and in violation of 18 U.S.C. § 1343, for the purpose of perpetrating the fraudulent scheme, Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone caused funds to be transmitted via wire in interstate or foreign commerce, including but not limited to transfers sent or received on or about the following dates:

A.    $12,000,000 by wire transfer on June 30, 2006;

B.    $17,000,000 by wire transfer on October 31, 2008;

C.    $6,000,000 in sum by wire transfers between August 2005 and May 2011;

D.    $15,000,000 by wire transfer in June 2013; and

E.    Other transfers that may become known throughout the course of discovery.

141.    These mailings and wire transactions were knowingly directed by Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone, or were reasonably foreseeable as a result of those Defendants' actions in the course of perpetrating the Intelepeer Enterprise.

142.    These mailings and wire transactions were done in furtherance of the goals of the Intelepeer Enterprise.

### Civil RICO Violations, Causation and Damages

143.    The RICO Defendants' criminal enterprise is ongoing and will in all likelihood continue in the future unless halted by this or other legal action, as indicated by their continuing solicitation and receipt of monies derived from fraudulent stock sales, as well as the RICO Defendants' intent to proceed with an IPO in the future.

144.    Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, and Simone violated 18 U.S.C. § 1962(c) in that they were employed by or otherwise associated with the above-described criminal enterprise and directly or indirectly participated in the affairs of the criminal enterprise through the above-described pattern of racketeering activity.

145.    As a result of the RICO Defendants' conduct, Plaintiff has suffered substantial damages in the form of lost property, by virtue of his diluted/stolen interest in Intelepeer, plus all consequential damages flowing therefrom, including lost returns.

146.    Plaintiff is entitled to recover three times his actual damages, plus costs and interest, in accordance with 18 U.S.C. § 1964(c).

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, Simone, Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures in the amount of their actual damages, which sum shall be trebled in accordance with 18 U.S.C. § 1964(c), plus costs, and award such other equitable relief as the Court may find just and proper under the circumstances.

### Count VI
### False Registration Statement
### Violation of Section 11 of the Securities Act of 1933, 15 U.S.C. § 77K, § 77x
### (Against all Defendants)

147.   Plaintiff incorporates by reference the allegations stated in the above paragraphs.

148.   As part of their fraudulent scheme described above, the Defendants did cause a Registration Statement to be filed with the SEC containing an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

These acts are described with particularity above and herein, particularly paragraphs 89-92.

149.   The Defendants knew or recklessly disregarded the fact that the Registration Statement they caused to be filed contained an untrue statement or omission of material fact, particularly Plaintiff's forged signature.

150.   All Defendants signed the Registration Statement.

151.   As a result, all Defendants have violated the Securities Act of 1933, 15 U.S.C. §§ 77a et seq., and the Rules and Regulations thereunder.

152.    By reason of having signed the Registration Statement, all Defendants are responsible and jointly and severally liable under Section 11 of the Securities Act of 1933, 15 U.S.C. § 77K(a)(1), as well as 15 U.S.C § 77x.

153.    As a result of the false Registration Statement, Plaintiff has suffered substantial damages and irreparable injury.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against all Defendants in the full amount to which Plaintiff is entitled, plus interest and costs, and order any additional or other relief that the Court may deem just and proper under the circumstances.

**Count VII**
**Common Law Conversion**
**(Against Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, Simone, Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures)**

154.    Plaintiff incorporates by reference the allegations stated in the above paragraphs.

155.    Plaintiff at all relevant times owned a 20.3% interest in Intelepeer.

156.    Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, Simone, Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures wrongfully exerted dominion over Plaintiff's interest by, but not limited to, all of the following:

A.    Intentionally and unlawfully diluting/stealing Plaintiff's interest under the guise of legitimate stock sales;

B.    Disseminating false and misleading prospectuses in connection with the stock sales;

C.    Issuing false and forged stock offerings and agreements;

D.    Issuing and uttering false and/or counterfeit securities; and

E.    Disguising these actions and preventing their discovery.

157.   Defendants have wrongfully refused to return Plaintiff's interest following demand.

158.   The Defendants concealed, embezzled, or converted Plaintiff's interest and property for their own use.

159.   Defendants' conduct as alleged herein constitutes a conversion of Plaintiff's interest in Intelepeer.

160.   As a proximate result of Defendants' conversion, Plaintiff has incurred substantial damages in the form of lost property, by virtue of his diluted/stolen interest, plus all consequential damages flowing from Defendants' conversation, including lost returns.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against Defendants Intelepeer, Haba, Quandt, Raman, Belanger, Fawzi, Ferguson, Simone, Salzman, Petroni, Rumbold, Campbell, VantagePoint, MG Capital, Kennet Ventures, and EDF Ventures in the full amount to which Plaintiff is entitled, plus interest and costs, and order any additional or other relief that the Court may deem just and proper under the circumstances.

### Count VIII
### Fraudulent Misrepresentation
### (Against all Defendants)

161.   Plaintiff incorporates by reference the allegations stated in the above paragraphs.

162.   As part of the fraudulent scheme described above, all Defendants made a number of misrepresentations of material facts deliberately or with reckless disregard for the truth, each of which representations was false when made, including those identified in the above paragraphs.

163. The above representations were false when they were made.

164. All Defendants made the misrepresentations with the intention of defrauding Plaintiff.

165. All Defendants conspired together for the common purpose of defrauding Plaintiff, which conspiracy included the fraudulent misrepresentations stated above.

166. By virtue of the conspiracy, all Defendants are liable for the fraudulent misrepresentations committed by their co-conspirators.

167. As a result of the fraudulent misrepresentations, Plaintiff has suffered substantial damages in the form of lost property, by virtue of his diluted/stolen interest in Intelepeer, plus all consequential damages flowing therefrom, including lost returns.

**Count IX**
**Breach of Fiduciary Duty**

168. Plaintiff incorporates by reference the allegations in the above paragraphs.

169. At all times herein Plaintiff is a stockholder in Intelepeer.

170. By reason of their status as an officer, manager, and/or director, or of their participation in the operations of Intelepeer, all Defendants were a "control person" of Intelepeer.

171. As such, all Defendants are fiduciaries to Plaintiff.

172. In addition, all Defendants owe a fiduciary duty to Plaintiff because they were in a position of faith, confidence, and trust in connection with Intelepeer.

173. As fiduciaries to Plaintiff, all Defendants are required to discharge their duties in good faith, in a prudent manner, and in the best interest of Plaintiff.

174.   All Defendants breached their fiduciary duty to Plaintiff by their actions and conduct identified herein.

175.   The breach of fiduciary duty by all Defendants was in furtherance of the conspiracy between all Defendants.

176.   By virtue of the conspiracy, all Defendants are liable for the breach of fiduciary duty committed by their con-conspirators.

177.   As a direct and proximate cause of the breach(es) of fiduciary duty, Plaintiff has suffered substantial damages in the form of lost property, by virtue of his dilution/stolen interest in Intelepeer, plus all consequential damages flowing therefrom, including lost returns.

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor against all Defendants in the full amount to which Plaintiff is entitled, plus interest and costs, and order any additional or other relief that the Court may deem just and proper under the circumstances.

## Count X
### Application for Constructive Trust
### (Against all Defendants)

178.   Plaintiff incorporates by reference the allegations stated in the above paragraphs.

179.   Plaintiff has been damaged by Defendants' conduct.

180.   The acts described above warrant the imposition of a constructive trust for the benefit of Plaintiff on the monies, real and personal property or other assets obtained by the Defendants through the dilution, theft, and/or use of Plaintiff's interest in Intelepeer as the result of fraud, unjust enrichment, conversion, and/or other circumstances which render it inequitable for the Defendants to retain the monies and/or other property of Plaintiff.

WHEREFORE, Plaintiff requests that this Court impose a constructive trust for the benefit of Plaintiff on the monies, real and personal property or other assets obtained by each Defendant through the dilution, theft and/or use of Plaintiff's interest in Intelepeer that Defendants received as a result of fraud, unjust enrichment, conversion, and/or other circumstances which render it inequitable for Defendants to retain the monies and/or property of Plaintiff.

## RELIEF REQUESTED

A.   Declaring the actions of the Defendants as unlawful "predicate acts" as defined by the Racketeer Influenced Corrupt Organizations Act and as willful acts of criminal conspiracy in violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q; Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and Rule 10b-5, 77 C.F.R. § 240.10b-5;

B.   Issuing its permanent injunction against the aforementioned predicate acts;

C.   Awarding Plaintiff actual damages in the amount of $152,933,429, which sum represents the actual value of Plaintiff's 17.8% interest in Intelepeer that was unlawfully diluted/stolen (from 20.3% to 2.5%), based on valuations set forth by Intelepeer in SEC filings and acknowledged by this Court on January 31, 2012, case no. 1:08-CR-282;

D.   Ordering that the United States District Court for the Western District of Michigan be placed in first position for disbursement of funds in payment of restitution in case no. 1:08-CR-282, in an amount not to exceed $24,953,841, as payment in full to monies owed to the Courts;

E.   Awarding Plaintiff threefold compensatory damages in the amount of $458,800,287 pursuant to 18 U.S.C. § 1964(c) for Defendants' RICO violations, plus interest and costs applicable to this action;

F.   Awarding Plaintiff punitive damages sufficient to sanction Defendants for federal securities fraud, criminal conspiracy, and the operation of a "continuing criminal enterprise," in the amount of $152,933,429;

G.   Ordering any such other relief that the Court may deem just and proper under the circumstances.

## JURY DEMAND ENDORSEMENT

Plaintiff requests a trial by jury composed of the maximum number of jurors allowable by law.


Dated:_____July 24, 2013_____


                              Respectfully submitted,



                              _____
                              Michael Vorce
                              Plaintiff, pro se

                              FCI Milan
                              Register No. 09764-089
                              PO Box 1000
                              Milan, MI 48160


Page 37